, 20-3040 and 20-3041, and we'll start with you, Ms. Cologne. Good morning again, everyone. I am Pamela Cologne. I am the attorney for Mr. Jamal Haynes, who is the appellant in this matter. I am requesting four minutes rebuttal time. Thank you. I'm also requesting that I be allowed to remain seated as I don't have access to a podium. Absolutely. Thank you. I appreciate that. Good morning, Your Honors. We are here today because the District Court abused its discretion in failing to grant Mr. Haynes' motion for a compassionate release. The matter arose early in May of last year, so almost a year to the date. Mr. Haynes realized that in his situation at his incarceration at FCI Jessup, he was concerned that there was going to be an outbreak of COVID within the inmate facility. And, in fact, that did happen, and it actually was a fairly severe one. He was assigned to the camp, which is the lower security portion of the facility at Jessup, and there were both staff members and a number of inmates, I think it totaled over 200 eventually, that were infected with COVID or came back with a positive COVID test, and, in fact, one inmate actually died. His name was Ronnie, I believe. So, while Mr. Haynes initiated this with a letter to the warden requesting that he be granted compassionate release in May, and that was denied, at that time the outbreak had not yet occurred, but, pathetically, unfortunately, it did. And, eventually, even Mr. Haynes was tested positive for COVID-19. The case came before the court because Mr. Haynes received a letter from the warden denying his request to DOP, and so he took it to the next step and requested by motion directly to the court. Ms. Colon, we're familiar with the procedural history. What would be helpful to me would be if you could address how you distinguish the district court's reasoning in this case from that in Powellston, which we held was not an abuse of discretion. I do appreciate that, Your Honor, but, of course, each case must be determined on its merits. Each case is very fact-specific, and although Powellston both set the standard for review as abuse of discretion and also found in that case that it was not an abuse of discretion to deny the motion for compassionate release, here we believe there were two reasons why the district court violated the abuse. First, we don't think the court followed the proper procedure. The First Step Act 18 U.S.C. Section 3582C1A sets forth the procedure that's supposed to be used for compassionate release, and it requires that the court is first supposed to consider the 3553A factors and then determine whether or not there are exceptional compelling uses. Ms. Colon, let me stop you right there. How do you get that interpretation from a plain reading of Section 3582C1A? Because it reads, Your Honor, after considering the factors set forth in Section 3553A to the extent that they are applicable, then if it finds that there are extraordinary and compelling reasons, there should be then a grant of the motion for compassionate release. There's a sequencing within the statute itself. Yes, but it doesn't—I think one of the things which—I think you'll agree with me that in trying to determine the intent of the statute, you have to look at the statute as a whole. And you cherry-pick and put emphasis on the word after, but ignore the words, if it finds that. It seems to me that a plain reading of the sequence of if it finds that extraordinary and compelling reasons warrant such reduction, or that reduction is consistent with the applicable policy statement, precedes the analysis of the 3553A factors. Well, there's a reason that word is there, Your Honor. The legislator put it there. The Senate, the Congress put it there. I read it as it's written. But it says—let me stop you there. Well, that would discount the language after considering the factors. And I think you have to balance out and—well, as you said, and I agree with you, you have to read the statute as a whole, but then you are eliminating the very specific phrase that I'm referring to. And what ends up happening is when you do eliminate that, it almost becomes a balancing test between the 3553A factors and whether or not there are extraordinary and compelling reasons to grant, which is what we believe the court did here. He balanced the two rather than incorporating the 3553 factors first and then making the determination as to whether or not there was extraordinary and compelling reasons. He actually made that determination. Let's say he— Yes, I'm sorry, Judge. Let's say the district court had done it in the order that you suggest and started with the 3553 factors. Wouldn't the result be the same? He never would have reached extraordinary compelling because based upon his review of the 3553 factors, there wasn't a reason to grant the motion. I can't say for sure how that would have turned out, Your Honor, because he did actually make the finding of extraordinary and compelling reasons. And that's why the opinion itself is problematic because he made that finding. And once he made that finding, it should have followed, it should have flown that there was an appropriate reason to release Mr. Haynes on compassionate release, provided that there was no finding that he was a danger to the community or to any particular person. I think that's the other factor that could have played into it. Go ahead. Go ahead. In your analysis, then, when does the district court's analysis of the 3553 factors come into play? It should be in the beginning. It should be the first thing that the court looks at. And then after reviewing all of those and finding that there's reason to go on to then find whether or not there's extraordinary and compelling reasons for the release, then he could make a decision as to whether or not, in fact, that existed. That would be the steps in the sequencing that the statute itself lays out. Here, the court didn't do that. The court actually made a finding of extraordinary and compelling reasons. And Mr. Haynes is left with that finding, wondering, well, then why didn't I get released, since there was also no finding that I was a danger to anyone or to the community. So there was no finding of dangerous. There was a finding of extraordinary and compelling reasons. And yet he was not released as what would have been required in the sequencing as I read the statute and as I believe the statute is appropriately interpreted. But what do you do with the judges? Regardless of the sequence, what do you do with the district court's analysis of the 3553 factors? Because it seems like that was the basis for his decision. I agree. And we also believe that that was an abuse of discretion on the merits. But we first were addressing... I'm sorry, I didn't hear you, Judge. Is that your second point? That is my second point. Yes, exactly. That is my second point. But our first point is he made a finding of extraordinary and compelling reasons. He did not make a finding that the appellant was a danger to anyone. Based on those alone, those two factors alone, this should have been a release for Mr. Haynes. Okay, you're saying that on the merits there's an abuse of discretion. Yes. I mean, it seems to me that the key finding here by the district court was this was a case involving 136 plus kilos of cocaine. That's correct. No matter how much time Mr. Haynes puts in, it's still going to be a case involving 136 plus kilos of cocaine. How do you get beyond that? Well, a few reasons. First of all, if that alone is the basis... And I agree with you. I think it comes down to that. Because really all of the findings of the court face itself in the nature of the conviction itself. And if you're going to say that a conviction for cocaine conspiracy will always weigh against you on the 35, 53, 80 factors when you're looking at a motion for compassionate release, then that would mean automatically that anybody convicted of such a crime would never be eligible for compassionate release. And that's what the statute says. The statute does not eliminate any particular crime. So the nature of the crime of conviction itself should not be a bar just because there was a conviction for a cocaine conspiracy case. You agree that it's a valid consideration. The seriousness of the offense is a valid consideration. It is. I'm not disagreeing with that, Your Honor. But I think that the weight that was assigned to it was so heavily weighed against the appellant that all other factors were not considered appropriately and were not weighed in his favor. Because, as the Supreme Court said in Pepper versus U.S., when you are looking to re-sentence, and I appreciate that was a different circumstance for the resentencing in the Pepper case. But when you are looking to re-sentence a defendant, you are supposed to look at his rehabilitation efforts from the time of the first sentencing. And that really wasn't considered at all by the court. So when you take a look at what he actually had done. And the fact that he had qualified for relief, even under the Second Chance Act, because he had been on the matrix divided by the Bureau of Prisons, a minimal risk, which is the lowest risk you can get. I think he scored a two, which is, you know, almost as low as you can get. He clearly was not somebody that was going to be a risk for release for recidivism as the Attorney General of the United States government. So using their own factors, there was no balancing here by the court of the seriousness of offense, which gets passed. There's no way that will ever change, but comparing it to the rehabilitation efforts and the current status of Mr. Haynes' characteristics and history to demonstrate that he has absolutely been a model person. He's done everything he was supposed to do. And he, by their own assessment, by the United States own assessment, is almost as low as you can possibly get in terms of recidivism. Thank you, Ms. Colon. Time has expired. Unless my colleagues have additional questions at this point, we will hear from Ms. Smith. Thank you. Apologies, Judge Krause. This is Greg. I just wanted to interrupt briefly. Judge Porter, I have your second device that I'm going to bring in, but I just want to make sure that we mute that audio so there's no problem there. No problem. I just also want to explain why others might see another screen pop up. Thank you. No problem. Is there something you need to do right now, Greg, that we should wait for or can we move forward? No, I think, Judge Porter, I did bring it in. Is that one connected for you? Yes. Okay, all right. So now I'm going to ask Ms. Smith to unmute and then she'll be able to proceed. Very good. Good morning. Good morning. Good morning, Your Honors. Delia Smith appearing on behalf of the United States. Your Honor, the first thing that I, Your Honors, the first thing that I'd like to correct for the record is the statement that the court in its findings, having reviewed the 3553 factors, did not find that Mr. Haynes is in fact a danger to the community. If released, according to the appellate the appendix page 12 of the appendix, the court stated that it is not convinced that defendant Haynes would not be a danger to the community if released, and that, that despite his argument that he is not, that he would not be a danger to the community, the court weighed the risk of recidivism, especially involving drug cases, and found that Mr. Haynes would in fact be a danger to the community if he were released. I just wanted to start with that. Is your, is your argument there that that's a separate independent basis to conclude that the court would not have used this discretion? It is one of the 3553 factors that the court is required to analyze when deciding whether or not the defendant can in fact be released, notwithstanding a finding of compassionate or extraordinary and compelling reasons for the motion for compassionate I think that the court was extremely careful in analyzing and recognizing all of the health conditions that Mr. recognizing that Mr. Haynes had also been affected, he had had been infected by the covert 19 and had recovered since during the interim of his compassionate release. When it was subsequently argued and decided, Your Honor, I, Your Honors, I'm not certain the argument for abuse that appellee appellant is making regarding the, which comes first the chicken or the egg is, as far as considering the 3553 factors before or after a determination of compassionate release was warranted. Miss Smith, Miss Miss Smith, let me just clarify one thing about your statement on the danger of the community. Didn't the district court find that that factor weighed neutrally. Your Honor. Your Honor, the, the, the court. The position of the government, Your Honor, is to essentially correct what the appellate the appellant stated in her opening, suggesting that the court did not find that Mr Haynes would be a danger, especially since the appellant is relying on that particular factor as one that should be weighed strongly in this court's decision as to whether or not abusive discretion occurred, and that error cannot stand because it is a factor that the appellant is weighing heavily and asking the court to weigh heavily in its decision as to whether an abuse occurred. So it is not, it doesn't weigh any more than any of the other 3553 factors. The court can that the court considered and in its decision, Your Honor to deny the compassionate release motion, but it is a factor, and it was not, it was not decided in favor of the defendant. But it was. Do you disagree that the, the court found that it was neutral. No, I do not, Your Honor. You don't, you don't agree with that. I believe your honor that. Well, your honor is asking whether I agree with the court or disagree I do not agree. I do you do you agree that the district court found that that on that factor of dangerousness, that the facts balance themselves out and we're neutral. I agree with the with the holding of the district court your honor. I believe that all of these factors must be taken in as a totality in considering whether or not those 3553 factors are in fact in found in favor of the appellant, and I believe your honor, all, all of the factors in its analysis the court demonstrated why Mr Haynes does not meet the criteria as set forth by the 3553 as, as this court has set out in any number of cases decided pre and post. Mr Haynes is decision made by the district court, specifically the fact that he had only served Mr Haynes had only served a total of 38 months out of a 135 month sentence. Even though it is a neutral factor all of these factors were considered. I would ask your honors will pay particular attention to the fact that 38 months is less, there's still 70% or more of this appellants sentence left to be served. And the policy statement of the 3553 factor is to have parity and to send that policy meant that message that a defendant, seeking with to be released from custody having served only 30 less than 30% of his sentence your honor is not consistent with the policy statement of the 3553 and so this exercise by this court, the district court was careful it was an extraordinary and comprehensive review of all of the factors that were set forth. And to mentioned, and to add that initially, Mr Haynes filed a pro se motion. That was his motion, and the court in in being extremely careful and cautious to protect all rights of the appellant had Miss Haynes. Mr Haynes represented by counsel, Miss Cologne my sister that's appearing on the other side, as she represented Mr Haynes during the underlying criminal case that resulted in a plea. So, the district court in our district, your honors went above and beyond, especially recognizing that Mr Haynes did in fact have a history medically that did in fact support extraordinary and compelling medical conditions that would have warranted his right to be heard by the court for his compassionate release. Is it the government's position that there is some cut off in terms of the percentage of the sentence served that not at all, not not at all your honor, but it's certainly cannot be ignored. No, it is not our position, your honor, at all, and I've read any number of cases that was were decided by summary affirmance by the district by the Third Circuit, where in more dire medical histories, still were denied compassionate release. And, and, again, the court did way as one of the factors that is is set forth by the 3553 standards that the court did in fact way. That was one of the criteria that the court has to win so I'm not saying that it's more compelling. I'm just saying that it is compelling. All of these, all of these The different elements that have to be considered to the court. I'm not saying that any one is more important than the other. I'm just saying that they're all very compelling, especially in the case of Mr Haynes, and that it should not that the court should not lose focus of the fact that in this particular case because each case must be decided independently. But the other cases are that are decided by the Third Circuit are also precedents that is here to guide not only the district court, but also the United States in responding to these motions because Miss Smith, let me ask you a question here in in arriving at that percentage. In other words, the percentage of the sentence served in custody. Should have the district court. Compared to time served against the eligibility date for house arrest, which would have increased that percentage. Some was that an error and not evaluating that percentage. I don't, I don't believe that it is because I have not seen that consideration by other district judges in deciding that The percentage remaining on someone's sentence was was one that gave the court pause. I've read it. As I've stated, I've read a number of cases for For that have been decided at where there was specific attention paid by the Third Circuit as to the percentage of Time that had already been served and only few cases, Your Honor have actually made that additional You know, analysis as to the eligibility date for release, as opposed to how much time has already been served or remaining on one sentence. But Your Honor, even if we were to consider the eligibility date for release for Mr. Haynes, it does not undermine nor does it remove the fact that he still have still has over 70% of Of time remaining on 135 year sentence that was imposed pursuant to a plea agreement, Your Honor, and that was triggered by the mandatory That is required by the title 21 841 offenses. Ms. Smith, both you and Ms. Colon have emphasized that each case needs to be addressed individually. Yes. And I wonder, along those lines, how you assess the district court's Consideration of disparities between The defendant here and his co-defendants or co-conspirators. Well, Your Honor, in the third analysis made by the court, the reduction of his sentence where the court concluded that it was not warranted and in that particular area of his decision, the court did make note of the parity in sentencing of his co-defendants.  I believe that even in that analysis, the defendant, Mr. Haynes received the lowest sentence in that the remain the other co-defendants received sentences of 191 months 168 months 160 months So essentially, Mr. Mr. Haynes was on the low end of that sentence, especially and that was especially because of his plea agreement where he received the benefits of the reductions from His acceptance of responsibility as as well as his timely decision to decide to plead guilty in this case. I don't, however, feel that that would be of issue as for abuse by the district court. The fact that he didn't waive the other co-defendants sentences only because, Your Honors, Mr. Haynes was on the low, the low end of that sentencing guideline when compared to his fellow co-conspirators. That comparison may make sense under 3553A, the original sentencing proceeding, but isn't the entire purpose of 3582C1A to take account of such differences between co-defendants as a different health situation, a different risk level at different facilities. What relevance in that circumstance does it have that that would create a disparity or a greater disparity in this case with co-defendants? Your Honor, I believe that the court has to weigh these factors because those are the factors that have been set and the court has to follow that analysis in comparing because a disparity that is one of the areas or considerations that must be made by the court. I do, however, believe that this district court, Your Honor, gave all weight, all consideration, all benefits to this defendant when deciding whether or not, number one, there was in fact extraordinary and compelling reasons for him to be heard on a compassionate release. I would prefer, Your Honor, that the suggestion or the comparison as to the disparity in sentences that the court would weigh that as a neutral factor as it does with all of the other factors of 3553. There is no one consideration made by this court that weighed more heavily than any other factor. It was completely neutral across the board, but analysis, it did. Analyze it did. It did compare each factor. It did weigh every factor. Every factor was neutral to the other factor, but at the end of the day, what the district court is saying is that none of these factors, having considered all of these factors that is required to make in determining whether or not release is permissible pursuant to 3553, none of them weighed in favor of Mr. Haynes. So the argument that I'd like to make here is that the court didn't abuse any of its discretion because it weighed everything equally and nothing that it weighed favored the appellant. So there's no abuse here. It is just a situation where the appellant is not satisfied with the outcome of the court's decision. Nonetheless, that is not a basis to establish abuse by this district court. Nothing in this record points to an abuse. The court took copious steps in determining and weighing every single factor, especially since the court went as far as establishing on the record that there was compelling and extraordinary medical conditions that warranted release pursuant to statute. Thank you, Ms. Smith. Time has expired, so unless my colleagues have additional questions at this point. I do have a question for Ms. Smith and I'd like Ms. Colon to think about it too. In her opening remarks, Ms. Colon mentioned that after the motion, maybe after the district court's memorandum of opinion, several hundred inmates did contract COVID. Is that something that we can consider? And if we can, should we consider the fact that currently there are two people at FCI Jessup with COVID according to the BOP statistics? No, Your Honor. I don't think that that would be a fair consideration because then the government would not have had the opportunity to advise the court of how many steps the BOP has taken and the fact that the BOP has started administering COVID, the COVID vaccine. Even though the basis for the motion was COVID, the presence of COVID and the risks associated with COVID, we shouldn't consider more recent information that we now have about COVID. We're stuck with this snapshot in time. Is that correct? Well, Your Honor, the only thing I would ask is that if Ms. Colon is allowed to proffer additional information regarding the cons as it relates to Jessup FCI, that the United States be equally allowed to offer or to supplement our record to show the amazing, careful steps that the BOP has in fact taken that addresses the correction and administration of health and separation of all of the steps they have taken pursuant to the CDC guidelines and to show how far they've gotten as far as controlling the disease, notwithstanding additional cases of COVID-19 because the problem here would be that it would suggest that Mr. Haynes is still exposed, that he is not, that he's in a population that re-exposes him to contracting COVID-19. And so the record, if the record is to be complete, then it must include other steps that the BOP has taken in fairness to the United States, Your Honor. Thank you. Judge Fischer? I have nothing else. Thank you. Thank you. Thank you, Ms. Smith. Ms. Colon, we'll hear from you in rebuttal. Thank you. Judge Porter, I would like to address your question first. The problem with looking at the current status is that, in fact, there are still cases of COVID, no matter how extreme and how wonderful the efforts of the BOP have been, they have not been able to eradicate it at Jessup or even across the entire system. But we don't have any of those details as part of the record here. But certainly, as you noted, there are still cases there, which means Mr. Haynes is still exposed. And if we have to open up the record, we'd also be talking about the variants and all the other problems that have occurred throughout the states with ongoing issues, even though it seemed in some places COVID had been in remission. But obviously, Jessup still has a problem. But to do that here, we don't really have a record. We don't have a full record. And it wouldn't be fair to Mr. Haynes either, because he can demonstrate how he is still at risk because it's COVID at Jessup. I'd like to turn to the question of disparity in sentencing. I think part of the problem was that the court looked at the defendants as they stood when they were originally sentenced. And that was not, I do believe that was an abusive discretion, because they are no longer similarly situated. Mr. Haynes has extreme medical conditions that put him at very high risk for severe outcomes if he contracted COVID. And the court actually acknowledged that he's still in that situation just because he contracted COVID did not diminish the extraordinary and compelling reasons for his release, his medical release. So under, I think the case is US v. Johnson, it's a Second Circuit case, it's an older case. But it does talk about a disparity in sentencing is not unwarranted if there is different law. And currently now, there was the First Step Act, the Second Chance Act, and the CARES Act, all implemented after the initial sentencing, all of which changed the structure within which any compassion or belief system is established. So we believe that the court actually did abuse of discretion with regard to comparing and finding that the disparity would have been unwarranted because it was not under the changing law, number one, and of course, under Mr. Haynes' particular circumstances. We also believe it wasn't abuse of discretion to take a look at the percentage of the sentence as based against the absolute full sentence that was issued to Mr. Haynes. First of all, BOP doesn't do that. I believe it was at the Joint Appendix, page 68, and also at page 542. That was in response to a calculation of prison time done by the BOP. They concluded that Mr. Haynes, at that time, and that was back in May of last year, had served 30% of his sentence. And I believe that that was calculated based on his projected release date, which was February 9, 2027. Of course, his initial home detention release date eligibility was August 9, 2026. But because he qualified for the Second Chance Act, his actual home detention release date based on the Second Chance Act would be somewhere between July 9, 2025 and September 9, 2025. And obviously, when we look at it in terms of those release dates, and they are release dates, his release to home confinement, which is what he's requesting here, he served a much greater percentage of his time. He served a death, I believe, over 50% of his time when compared to the release date for home confinement as opposed to the full possible sentence that he could have served as incarcerated. So again, we feel it was an abusive discussion of the court to only look at the ultimate full sentence as opposed to the reality of what actually happens when they get released. Ms. Colon, can you point to any authority in our circuit or others where the calculation of percentage of sentence remaining to be served was based on the home confinement eligibility date? I don't have that authority, Your Honor. I wish I did. I hope you guys create it. However, what I do have is the BOP's own analysis and how they calculate what a percentage of the full sentence, excuse me, percentage of sentence that they feel has been served. And again, that's the United States. And I think that we should rely on at least what they say. And they were basing it on his projective release date. But also within all of his records, it's clear that he was eligible for first chance. He was eligible, I mean, for first step, excuse me, and eligible for second chance, all of which would have factored in and could have him release the home confinement as early as June 2025, which right now is four years and two months away. So that dramatically changes the calculation if you're going to rely on percentages. And to be honest, we don't believe that that was an appropriate reliance in the first place. There are many cases that we cited to that came out of Joseph, U.S. versus Smith, and I believe the other one was U.S. versus Hendry, where both of those defendants served significantly less time. I believe Smith had only served 10%. And still, because he tested positive and had conditions related to the severity of COVID disease that he contracted it, he was granted, excuse me, compassionate release. I believe that case was out of Florida and the other case, I believe, was out of Washington, D.C., excuse me, the state of Washington. And, you know, the reality is they were very similarly situated to Mr. Haines, except Mr. Haines's conditions were even more severe and he had served even more time and he had a different worth of time and it was a nonviolent crime. Thank you. Thank you, Ms. Colon. We've gone a bit over. I have one question for Ms. Colon, if I could. I don't know that the district court did it here, but as you alluded to in your comments, the Bureau of Prisons is perhaps in the best position of anybody to make a determination of who should and who shouldn't be released. With the fact that the Bureau of Prisons did not petition for compassionate relief, would that be a consideration that a district court would be allowed to weigh in determining whether or not to find extraordinary and compelling circumstances? Your Honor, we believe the reason that that occurred here. And again, I think it's at page 68 of the joint appendix. The denial was simply because of the percentage at 30 percent of time served. And that was the cap in which the Bureau of Prisons is allowed to file these motions, I believe is at 50 percent. And I think that's why that didn't happen here. So, no, I do not believe that in this case it should be weighed against Mr. Haynes because the statute does allow the individual to then go ahead and file. If I may conclude, we are requesting that the decision of the district court be reversed and that Mr. Haynes be granted a compassionate release. Thank you very much. Thank you. Judge Porter, any further questions? No, thank you. And Judge Fischer, nothing further? No. Very good. Thank you, Ms. Colon and Ms. Smith. We will take the case under review.